UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MERRIN ACCARDI                                         JURY TRIAL DEMANDED

    v.
                                                        CASE NO.

JOSEPH J. ROMANELLO, JR.
LASER BODY RENEWAL, LLC
JASON M. LORD

## COMPLAINT

1. Plaintiff Merrin Accardi brings this action to obtain relief for Defendants' violations of (i) the federal Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq*. (FDCPA), see §1692c, d, e, f or g, (ii) the Connecticut Creditor's Collection Practices Act, Conn. Gen. Stat. § 36a-645 *et seq.* (CCPA), see C.G.S. §36a-646, C.G.S. §36a-648, and regulations adopted thereunder, (iii) the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110g (CUTPA), defamation, intentional infliction of emotional distress, or negligent infliction of emotional distress.

2. This Court has jurisdiction. 15 U.S.C. §1692k(d); 28 U.S.C. §1331, §1367.

3. Venue is proper because Plaintiff and defendants are citizens of Connecticut.

4. Plaintiff is a natural person who was the object of efforts by Defendants to collect a disputed medical debt incurred for personal purposes. She is a long-time resident, property owner and taxpayer of Fairfield CT, gainfully employed, with a husband and children.

5. Defendant Romanello (Romanello) is a Connecticut attorney who regularly attempts to collect personal debts from natural persons through the use of the mails on behalf of defendant Laser Body Renewal, LLC (Laser) and others.

6. Defendant Laser is a Connecticut corporation which offers to the retail public a laser body contouring procedure for skin tightening and fat removal.

7. At the time of the events herein, Laser offered a complete refund to customers who were not satisfied with the procedure. "REFUND POLICY. If you are not satisfied with your initial results immediately after your first session or if you do NOT lose at least one inch from your stomach region after your first session, we will refund the cost of that package that same day." [www.laserbodyrenewal.com/pricing](www.laserbodyrenewal.com/pricing) (last visited April 1, 2022) (Refund Policy).

8. Defendant Jason M. Lord (Lord) is a Connecticut chiropractor who owns and personally operates and controls Laser and performs the contouring procedure. [https://laserbodyrenewal.com/](https://laserbodyrenewal.com/). Also at the same address, see [https://hobnob.world/about-2/](https://hobnob.world/about-2/); [https://claritymarketingconsulting.com/team/](https://claritymarketingconsulting.com/team/); [https://lizamariani.com](https://lizamariani.com).

9. As of August, 2021, Laser and Lord allegedly owed its landlord more than $100,000.00, and had not paid rent to its landlord since January 2020. After default, and sometime on or before April 2022, Laser and Lord settled with the landlord. [https://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=DBDCV216040295S](https://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=DBDCV216040295S)

10. As of January 2021, Lord allegedly owed Bank of America more than $42,000. After default, and sometime in or before July 2022, Laser satisfied the judgment. [https://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=FSTCV216049864S](https://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=FSTCV216049864S)

11. Eric K. Patenaude (Patenaude) is the K-9 officer of the Wilton Police Department who has been a Wilton police officer since 2014, engaged in normal police activities such as traffic stops and drug busts. He has been named officer of the year in part based on having the

most arrests. Upon information and belief, he may have a financial or personal interest in collecting normal retail debts by threat of arrest for larceny, or he regularly obtains warrants for larceny for civil debts owed to local merchants in accordance with approved practice and procedure of the police department and the Town of Wilton, CT.

12. On or about February 5, 2022, Lord convinced Plaintiff to avail herself of the services of Lord and Laser, relying on the representation that if she was not satisfied, her money would be entirely refunded.

13. Neither Lord nor Laser ever presented her with a contract or any agreement.

14. Plaintiff used two credit cards to pay a total of $5,040.99 in advance for twelve sessions at $420 per session.

15. Plaintiff was not satisfied with her first one-hour treatment and asked for a refund. She also informed Lord that she suffered from anxiety.

16. On February 10, 2022, Defendant Lord credited a partial refund of $3795.35, claiming that Laser was entitled to keep $700.00 for the one-hour session and $545.64 for credit card fees incurred, neither of which statement was consistent with Laser's stated Refund Policy.

17. Plaintiff communicated to Lord that she disagreed with him regarding the amount of the refund.

18. On February 11, 2022, Plaintiff asked for a refund of $1,244.65 from her American Express credit card arising from the Laser transaction.

19. Under date of March 25, 2022, with the knowledge and authorization of Lord, Romanello mailed the attached letter to Plaintiff. Exhibit A (Romanello Letter).

20. Romanello's Letter, received by Plaintiff on March 31, 2022, was the first time

3

that Plaintiff became aware that American Express had refunded her the entire amount of the disputed transaction instead of the much lower amount she requested in her dispute.

21. On its face, the Romanello Letter appears designed to bully and intimidate Plaintiff into paying an amount she clearly did not owe, with its references to fraud, unjust enrichment, and reporting to the "proper authorities" if Plaintiff did not pay the amount demanded "within seven (7) days of the receipt of this letter." Exhibit A. 15 U.S.C. §1692d; Harvey v. Great Seneca Fin. Corp., 453 F.3d 324, 330 (6th Cir. 2006).

22. The Romanello Letter petrified Plaintiff by its repeated references to "contacting appropriate authorities": "We are writing prior to proceeding to contacting [sic] the appropriate authorities"; "Fraud may be the least statutory violation you may be facing if Laser Body Renewal commences an investigation with the appropriate authorities"; "[W]e will have no choice but to contact the appropriate authorities." Exhibit A. See 15 U.S.C. § 1692d; Cf. Conn. Gen. Stat. § 53a-119(5)(D) (extortion); §53a-49 (attempt).

23. In fact, Lord had already contacted Patenaude on March 6, 2022, to instigate criminal proceedings, but did not advise him that Plaintiff disputed the amount due for good reason.

24. Under date of August 26, 2022, Plaintiff sent a check for $2,096.35, inclusive of $700 for one session, to Romanello, representing the excess from the American Express credit over that which she had requested.

25. Under date of October 6, 2022, defendants returned the check while further claiming there were unspecified services valued at $1,245, inclusive of $700 for one session, with threats of criminal consequences if she did not pay the disputed amount. Exhibit B.

4

**VIOLATIONS OF THE FDCPA BY ROMANELLO**

26. On its face, the Romanello Letter violated the FDCPA by demanding payment "within seven (7) days of the receipt of this letter." 15 U.S.C. §1692g; <u>Russell v. Equifax A.R.S.</u>, 74 F.3d 30, 35 (2d Cir. 1996); Reg. F, 12 C.F.R. § 1006.38(b)(1), (3), (4), and (d).

27. On its face, the Romanello Letter violated the FDCPA by limiting disputes to a writing. 15 U.S.C. §1692g(a); <u>Hooks v. Forman, Holt, Eliades & Ravin, LLC</u>, 717 F.3d 282, 286 (2d Cir. 2013).

28. The Romanello Letter also violated the FDCPA by demanding more than was, in fact, due or owing since Laser still owed Plaintiff at least $1,245.64 (refund for first session and credit card charges). 15 U.S.C. §1692f(1).

29. On its face, the Romanello Letter evidenced the sort of abusive practice sought to be eliminated by the FDCPA, since "means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts."15 U.S.C. §1692(c); see also §1692(a), §1692f (unfair or unconscionable practices).

30. The Romanello Letter included several misrepresentations, including that Laser had attempted to resolve the matter; that Romanello and Lord would have "**no choice** but to assume you do not intend to remit payment": that they would have "**no choice** but to contact the appropriate authorities as well as institute legal action in which we will also include a claim for all legal fees and treble damages." (Emphasis added.)

29. On April 6, 2022, prior to the expiration of the Romanello Letter's 7-day payment deadline, at the instigation of Lord and with the knowledge and approval of Romanello, Patenaude called Plaintiff about the credit she received from American Express from the Laser

5

transaction.

30. Plaintiff tried to explain to Patenaude on the call that it was American Express's mistake, but Patenaude seemed to want to disbelieve her, and became very aggressive, as well as refusing to accept the name of her attorney, telling her he did not need to talk to her attorney. Without documentation, he jumped to the conclusion that "friendly fraud" was involved.

31. On April 7, 2022, Romanello received an email alerting him to the fact that the amount demanded was disputed, as well as disputing his demand for attorney's fees, and alerting him to other violations of the FDCPA and the CCPA.

32. By demanding more than was due or owing, Exhibits A and B violated 15 U.S.C § 1692e.

33. By referring a disputed civil matter to Patenaude for criminal prosecution, Romanello also violated 15 U.S.C. §1692(c)(b) of the FDCPA.

## VIOLATIONS OF THE CCPA BY LASER & LORD

34. Lord and Laser each independently violated the CCPA and/or Reg. Conn. State Agencies §36a-647-6(8) (prohibiting a "false representation or implication that the consumer debtor committed any crime or engaged in any shameful or disgraceful act."); see also C.G.S. §36a-646, C.G.S. §36a-648.

35. Lord and Laser each independently violated the CCPA when, as a creditor, they used an abusive, harassing, fraudulent and deceptive practice to collect a consumer debt, including manufacturing a claim of larceny in order to collect a debt, instead of simply suing. C.G.S. §36a-648.

36. The conduct of Laser and Lord, in reporting a small debt to the police as larceny,

when they themselves allegedly owed more than $100,000.00 to their landlord and Lord allegedly owed more than $42,000.00 to Bank of America but was not arrested for larceny, violated the CCPA and/or Reg. Conn. State Agencies §§36a-647-5, 647-6.

## VIOLATIONS OF CUTPA BY LASER & LORD

37. Subsequently, at the behest of Laser and Lord (including through the assistance of their agent Romanello), Patenaude elicited and secured an arrest warrant for Plaintiff for larceny 3d degree from the State's Attorney for allegedly obtaining money from a Wilton business through false pretenses.

38. At the behest of Laser, Lord, Romanello and/or Patenaude, Plaintiff was arrested and her arrest was widely publicized, with information and picture provided to the press "by Wilton police."

https://www.wtnh.com/news/connecticut/fairfield/woman-turns-herself-in-to-wilton-police-for-larceny-charges/

39. Laser's and Lord's conduct, as outlined above, including manufacturing a claim of larceny in order to collect a debt, and demanding more than was due or owing, was extreme and outrageous.

40. The conduct of Laser and Lord, in reporting a small debt to the police as larceny, when they themselves allegedly owed more than $100,000.00 to their landlord and Lord allegedly owed more than $42,000.00 to Bank of America but was not arrested for larceny, was particularly outrageous.

41. In a civil society, it is beyond the bounds of decency for a creditor or lawyer to

use the criminal system as a bludgeon to elicit payment of a small, disputed debt.

42. A police officer's duty is to keep peace in the community, not to get involved in strong-arming a respectable citizen with threats of prosecution on behalf of a creditor. Such conduct brings distrust and disgrace to our police officers and detracts from public faith in the integrity of the police and the criminal justice system.

43. Laser and Lord's acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and for the simple purpose of coercing Plaintiff to pay a disputed debt.

44. Laser and Lord engaged in conduct, the obvious consequences of which were to harass, oppress, and abuse Plaintiff, and such conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be generally regarded as both atrocious and utterly intolerable in a civilized community.

45. Laser and Lord's unfair, deceptive, and outrageous acts and practices were willful, wanton, unfair, unconscionable, completely unacceptable in a civilized society, intentional and reckless, and specifically designed to inflict severe emotional distress upon an innocent consumer in a disproportionate attempt to extort payment of a disputed consumer debt.

46. Knowingly reporting a civil debt to the police as a criminal violation, involving arrest and fingerprinting, and reputational injury to the alleged debtor, naturally, foreseeably, and inevitably, has the natural consequence of causing severe anxiety, distress, humiliation, and expense, and Laser and Lord's actions did so in this case.

47. As a foreseeable and direct result of Laser and Lord's aforementioned practices, Plaintiff has suffered an ascertainable loss, including payment for a $25,000 bail bond.

8

48. As a foreseeable and direct result of Laser and Lord's oppressive and abusive collection tactics and unlawful practices, Plaintiff has suffered and continues to suffer from, among other things, lasting and irreparable injury, such as impairment and damage to her good name and reputation, emotional distress, mental anguish and suffering, inconvenience, expense, loss of enjoyment of life, lasting embarrassment and humiliation.

49. Plaintiff has incurred expenses in connection with the events described herein, including posting bail, and attorney's fees for her criminal defense.

### DEFAMATION BY LASER, LORD & ROMANELLO

50. Through the actions described above, the Defendants intentionally sought to defame Plaintiff.

51. Defendants made, with malice, false and defamatory statements about Plaintiff to Patentaude, to the Wilton Police and to the press regarding Plaintiff knowing such statements were false.

52. The Defendants' statements about Plaintiff and the alleged debt made were false and were intended to and did cause injury to the Plaintiff's reputation.

53. The Defendants' statements about Plaintiff continue to damage Plaintiff's reputation.

54. The statements about Plaintiff described above are false and defamatory.

55. Defendants directly or indirectly caused publication of the statements described above to third parties.

56. The defamatory statements described above were made with knowledge of their falsity or in reckless disregard as to the truth and/or in bad faith.

9

57. Some or all of the defamatory statements described above constitute defamation per se in that they charge Plaintiff with being immoral.

58. As a result of the defamatory statements made by the Defendants, the Plaintiff has suffered and/or continue to suffer generally from humiliation, anger, frustration, anxiety, emotional distress, fear, embarrassment, all arising from Defendants' unlawful methods in attempting to collect a consumer debt.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY ALL DEFENDANTS

59. The conduct of the Defendants as set forth above were extreme and outrageous.

60. The conduct of the Defendants as set forth above were undertaken with the intention to inflict emotional distress on Plaintiff and the Defendants knew or should have known that emotional distress to Plaintiff was likely to result from the Defendants' conduct.

61. The conduct of the Defendants as set forth above was the proximate cause of the Plaintiffs' damages including humiliation, anger, frustration, anxiety, emotional distress, expense, fear and embarrassment, and the same was committed intentionally, willfully, wantonly, maliciously, and/or in reckless disregard for the emotional well being of the Plaintiff.

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS BY ALL DEFENDANTS

62. The Defendants' conduct, as described above, created an unreasonable risk of causing the Plaintiff emotional distress.

63. The Defendants knew or should have known that their conduct as described

10

above involved unreasonable emotional distress to the Plaintiff and that such distress, if it were caused, might result in illness or bodily harm.

64. As a direct and proximate result of Defendants' conduct as described above, the Plaintiff has suffered illness in the form of severe emotional distress.

65. As a result of Defendants' negligence, the Plaintiff has suffered and/or continue to suffer generally from humiliation, anger, frustration, anxiety, expense, emotional distress, fear and embarrassment arising from the attempt by Defendants to collect on a small consumer debt.

**WHEREFORE** Plaintiff respectfully requests this Court to:

- Award Plaintiff such damages as are permitted by law, including actual damages, statutory damages, and punitive damages under applicable state and federal law. Fed. R. Civ. P. 54(c);

- Award Plaintiff attorneys fees pursuant to applicable federal and state law;

- Grant such other and further relief as may be just and proper.

               THE PLAINTIFF
               MERRIN ACCARDI

            BY /s/ Joanne S. Faulkner

            Joanne S. Faulkner ct04137
            faulknerlawoffice@snet.net
            123 Avon Street
            New Haven, CT 06511-2422
            (203) 772-0395

BY /s/ Eric L. Foster

Eric L. Foster, Esq. ct29740

Eric Lindh Foster Law, LLC
48 Main Street
Old Saybrook, CT 06475
Ph: 203-533-4321
efoster@lindhfoster.com

12